**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
Tel: (973) 533-0777
Fax: (973) 533-1112
*Attorneys for Plaintiffs,*
*FirstEnergy Service Company, FirstEnergy Corp. and*
*Jersey Central Power & Light Company*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRSTENERGY SERVICE COMPANY, *in its capacity as Plan Administrator of the FirstEnergy Corp. Welfare Plan and FirstEnergy Health Care Plan*, FIRSTENERGY CORP., and JERSEY CENTRAL POWER & LIGHT COMPANY,<br><br>    Plaintiffs,<br><br>    v.<br><br>NEW JERSEY BOARD OF PUBLIC UTILITIES, RICHARD MROZ, PRESIDENT OF THE NEW JERSEY BOARD OF PUBLIC UTILITIES, JOSEPH L. FIORDALISO, COMMISSIONER OF THE NEW JERSEY BOARD OF PUBLIC UTILITIES, MARY-ANNA HOLDEN, COMMISSIONER OF THE NEW JERSEY BOARD OF PUBLIC UTILITIES, DIANNE SOLOMON, COMMISSIONER OF THE NEW JERSEY BOARD OF PUBLIC UTILITIES, UPENDRA CHIVUKULA, COMMISSIONER OF THE NEW JERSEY BOARD OF PUBLIC UTILITIES, IRENE KIM ASBURY, SECRETARY OF THE NEW JERSEY BOARD OF PUBLIC UTILITIES, *in their official capacities*, JOHN G. GRAHAM, and MICHAEL B. ROCHE,<br><br>    Defendants. | Docket No.:<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiffs, FirstEnergy Service Company ("FE Service"), in its capacity as Plan Administrator of the FirstEnergy Corp. Welfare Plan and FirstEnergy Health Care Plan; FirstEnergy Corp. ("FE"); and Jersey Central Power & Light Company ("JCP&L") (collectively, "Plaintiffs"), by way of Complaint for Declaratory Judgment against defendants New Jersey Board of Public Utilities ("BPU");  Richard Mroz, BPU Commissioner and President ("Mroz"); Joseph L. Fiordaliso, BPU Commissioner ("Fiordaliso"); Mary-Anna Holden, BPU Commissioner ("Holden"); Dianne Solomon, BPU Commissioner ("Solomon"); Upendra Chivukula, BPU Commissioner ("Chivukula"); Irene Kim Asbury, Secretary of the BPU ("Asbury"), in their official capacities; and John G. Graham ("Graham"); and Michael B. Roche ("Roche"), alleges as follows:

## PARTIES

### Plaintiffs

1.     FE Service is a wholly owned subsidiary of FE, with its principal place of business located at 76 South Main Street, Akron, OH 44308.   FE Service is Plan Administrator of the FirstEnergy Corp. Welfare Plan ("FE Welfare Plan") and its Component Benefit Program, the FirstEnergy Health Care Plan ("FE Health Care Plan"), within the meaning of § 3(16)(A) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(16)(A), and the

terms of the FE Welfare Plan and FE Health Care Plan.

2.     As Plan Administrator of the FE Welfare Plan and FE Health Care Plan, FE Service is a "named fiduciary" within the meaning of ERISA § 402(a)(2), 29 U.S.C. § 1102(a).

3.     FE is a publicly traded electric utility corporation organized under the laws of the State of Ohio, and includes one of the nation's largest investor-owned electric systems.   FE's principal place of business located at 76 South Main Street, Akron, Ohio 44308.

4.     FE is the plan sponsor of the FE Welfare Plan and its Component Benefit Program, the FE Health Care Plan.

5.     JCP&L is a wholly owned subsidiary and electric utility operating company of FE.  It is also an electric public utility company of the State of New Jersey, which provides electricity generation, transmission, and distribution services to 1.1 million customers in northern and central New Jersey.  JCP&L's principal places of business are located at 300 Madison Avenue, Morristown, NJ 07960, and 101 Crawfords Corner Road, Building #1, Suite 1-511, Holmdel, New Jersey 07733.

## BPU and BPU Officials

6.     Defendant BPU is the New Jersey State agency with authority to

3

oversee the regulated utilities that provide critical services such as natural gas, electricity, water, telecommunications and cable television to customers in New Jersey. The BPU's principal place of business is located at 44 South Clinton Avenue, Trenton, NJ 08625.

7.     Defendant Mroz is a Commissioner and President, and Defendants Fiordaliso, Holden, Solomon, and Chivukula, are Commissioners of the BPU. Defendant Asbury is Secretary of the BPU.  Mroz, Fiordaliso, Holden, Solomon, Chivukula, and Ashbury (collectively, the "BPU Officials") are sued in their official capacities.

**Participant Defendants**

8.     Defendant Graham was formerly an Executive Vice President of GPU Service, Inc. ("GPUS"), a subsidiary of GPU Inc. ("GPU"), until his retirement on or about April 30, 1999.   Upon information and belief, Graham is a citizen of the State of Delaware, residing at 1100 Loverling Avenue, Wilmington, DE.

9.     Defendant Roche was formerly a Vice President with GPUS, until his retirement on or about December 1, 2001.  Upon information and belief, Roche is a citizen of the State of New Jersey, residing at 8 Riverbend Drive, Toms River, NJ.

## JURISDICTION AND VENUE

10.    This Court possesses subject matter jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 1132, and 28 U.S.C. § 2201.  This action brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, to obtain a declaration concerning the rights of certain participants to receive future company-provided subsidies toward the cost of retiree health care benefits under the FE Welfare Plan and its Component Benefit Program, the FE Health Care Plan, both welfare benefit plans governed by ERISA, 29 U.S.C. §§ 1001-1461.  Plaintiffs' right to seek judicial clarification regarding their obligations under the FE Plan arises exclusively under ERISA, 29 U.S.C. § 1132(a)(3).

11.    Venue is proper in the District of New Jersey under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2), because at least one of the named defendants resides in New Jersey.

## FACTUAL BACKGROUND

### BPU's Approval of the Merger Between FE and GPU

12.    On or about August 8, 2000, FE entered into an agreement and plan of merger with GPU, which provided for GPU's merger with and into FE (the "Merger").

13.    Before the Merger, GPU was a public utility holding company that

was the corporate parent and owner of all the common stock of JCP&L.

14.     Pursuant to the Merger, FE acquired GPU's 100% ownership interest in JCP&L's common stock and, thereby, JCP&L became a wholly owned subsidiary of FE.

15.     On or about November 9, 2000, FE and JCP&L filed a joint verified petition with the BPU for all necessary approvals with respect to the Merger, including approval of a change in ownership and acquisition of control of JPC&L.

16.     BPU staff sought discovery regarding FE and JCP&L's petition and, thereafter, on or about February 5, 2001, transmitted the matter to the New Jersey Office of Administrative Law ("OAL") for disposition.

17.     An administrative law judge ("ALJ") permitted several companies and interest groups to intervene and participate, including the Division of Ratepayer Advocate (now known as the Division of Rate Counsel).   FE and JCP&L participated in extensive public hearings throughout February, March, and April 2001,

18.     After extensive settlement negotiations, FE and JCP&L, the BPU staff, the Ratepayer Advocate, and several (though not all) intervenors executed a proposed Stipulation of Settlement ("Stipulation").

19.     On or about August 28, 2001, the ALJ issued his Initial Decision,

approving the Stipulation.

20.     On or about October 9, 2001, the BPU issued an Order approving the Merger ("BPU Merger Order"). A true and correct copy of the BPU Merger Order is attached as **Exhibit A**.

21.     In the BPU Merger Order, the BPU adopted the Stipulation, incorporating by reference the terms and conditions of the Stipulation, including Paragraphs 26 and 29.

22.     Paragraph 26 of the Stipulation, incorporated into the BPU Merger Order, requires that JCP&L "shall honor" all JCP&L pre-merger contracts and agreements in existence at the time of the Merger and that applied to current or former JCP&L employees.  Paragraph 26 provides:

> JCP&L **shall honor all JCP&L pre-merger contracts, agreements, collective bargaining agreements and commitments** that apply to current or former employees of JCP&L as well as all present obligations to employees from pre-existing pensions and retirement benefits, whether presently vested or contingent, as they become due.  [Emphasis added.]

23.     Paragraph 29 of the Stipulation, incorporated into the BPU Merger Order, relates to pensions plans and not employee welfare plans.  Paragraph 29 provides:

> FirstEnergy shall take no action following the consummation of the merger that would reduce the

accrued pension benefits of any GPU employee. FirstEnergy shall, in accordance with the requirements of the Employee Retirement Income Security Act ('ERISA'), continue to utilize pension assets for the exclusive purpose of providing accrued benefits to participants (including GPU employees) and their beneficiaries in accordance with the terms of the applicable pension plan.

24.     GPU was merged into FE effective on or about November 7, 2001.

### FE Retiree Health and Welfare Plans

25.     Upon the merger of GPU into FE, effective on or about November 7, 2001, FE became the plan sponsor of various ERISA employee welfare benefit plans that were sponsored by GPU and its subsidiaries, including but not limited to GPUS and GPU Nuclear, Inc. ("GPUN") (collectively, the "GPU Plans").

26.     After FE became the plan sponsor of the GPU Plans, they were merged into the FE Welfare Plan and/or its Component Benefit Program the FE Health Care Plan.

27.     After the merger of the GPU Plans into the FE Welfare Plan and/or FE Health Care Plan, the participants in the GPU Plans became participants in the FE Welfare Plan and/or FE Health Care Plan.

28.     The FE Welfare Plan is an employee welfare benefit plan (and not an employee pension benefit plan) within the meaning of ERISA, 29 U.S.C. § 1002(1) & (2)(A).

8

29.    The FE Health Care Plan is also an employee welfare benefit plan (and not an employee pension benefit plan) within the meaning of ERISA, 29 U.S.C. § 1002(1) & (2)(A).

30.    Effective on or about January 1, 2008, FE established the FE Welfare Plan and, as a result, the FE Health Care Plan merged into and became a Component Benefit Program of the FE Welfare Plan.

31.    A Component Benefit Program under the FE Welfare Plan is a type of insurance or coverage provided for, or made available to, eligible employees or eligible retirees, or a class of eligible employees or eligible retirees.

32.    A true and correct copy of the FE Welfare Plan Document, effective January 1, 2008 ("FE Welfare Plan Document"), is attached as **Exhibit B.**

## Modification and Termination Language in FE Retiree Health Care Plan Documents and Summary Plan Descriptions

33.    At the time of FE's acquisition of GPU, the plan documents and summary plan descriptions of the GPU Plans contained express language to reserve the right of GPU and/or its subsidiaries to modify benefits under the GPU Plans.

34.    The plan documents for the GPU Plans also explicitly stated that benefits received under the plans are not vested.

35.    After the Merger and at the time that FE determined to terminate the

9

plan subsidies that are at issue in this action, the FE Welfare Plan Document continued explicitly to provide that FE may modify or terminate the FE Welfare Plan, or any Component Benefit Program, such as the FE Health Care Plan, or any coverage option (as that term is defined in the FE Welfare Plan).

36.    In Article 10 of the FE Welfare Plan Document, effective January 1, 2008 (Exhibit B), FE reserved the right to "amend, modify, merge or terminate the Plan, including any Component Benefit Program and any Coverage Option, prospectively or retroactively, without prior notice to, or the consent of, any other party."

37.    Article 10 further provided: "Neither the Company nor any other Participating Employer makes any promise regarding the maintenance or continuation of the Plan, any Component Benefit Program, any Coverage Option or any benefit including no promise regarding any specific level of benefits either during employment or at or during retirement."

38.    With respect to Component Benefit Programs, such as the FE Health Care Plan, Article 2.8 of the FE Welfare Plan Document states: "Component Benefit Programs may be terminated, modified or amended, by the Company at any time and from time to time, by adoption of an amendment to the Component Benefit Program."

39.    A true and correct copy of the FE Health Care Plan Documents effective as of January 1, 2011, is attached as **Exhibit C**.  The FE Health Care Plan Documents also explicitly provide that FE may amend or terminate the FE Health Care Plan and that any benefits received under the FE Health Care Plan are not vested.

40.    The FE Welfare Plan Document First Restatement, effective January 1, 2014, a true and correct copy of which is attached as **Exhibit D** — the plan document for the FE Welfare Plan in effect at the time the plan subsidies that are at issue in this action were discontinued — also explicitly allows FE to modify or terminate the FE Welfare Plan, or any Component Benefit Program such as the FE Health Care Plan, or any coverage option.

41.    To date and continuously throughout its existence, the FE Welfare Plan has explicitly permitted FE to modify or terminate the FE Welfare Plan, or any Component Benefit Program such as the FE Health Care Plan, or any coverage option.   FE has previously modified the FE Welfare Plan without complaint.

### Graham and Roche's Receipt of Retiree Health Benefits under the GPU Plans and FE Health Care Plan

42.    Graham was an Executive Vice President of GPUS from on or about January 1, 1999 until April 30, 1999, when he retired as a GPUS employee.

11

43.    On or about November 30, 1998, Graham, GPU and GPUS executed a written agreement that set forth the terms and conditions of Graham's retirement of employment from GPU and GPUS.

44.    Section 7 of the retirement agreement with Graham concerned his receipt of health benefits and provided: "GPUS shall provide you and your family coverage under the Supplemental Medical Expense Plan for Elected Officers until the third anniversary of the Retirement Date, it being understood that if such plan is amended or terminated as it related to senior executives of GPUS generally, such amendment or termination shall be effective as to you also."

45.    After retirement, Graham was a participant in and received company-provided subsidies toward the cost of retiree health care benefits under the GPU Plans.

46.    After the merger of the GPU Plans into the FE Welfare Plan and/or the FE Health Care Plan, Graham was a participant in and received company-provided subsidies toward the cost of retiree health care benefits under the FE Health Care Plan.

47.    Defendant Roche was formerly a Vice President with GPUS, until December 1, 2001, when he retired as a GPUS employee.

48.    On or about November 29, 2001, Roche and GPUS executed a

12

written agreement that set forth the terms and conditions of Roche's retirement from employment with GPUS.

49.   Section 4 of Roche's retirement agreement with GPUS provided, in relevant part:

> Having attained the age of 55, you may elect coverage under the GPU Companies Retiree Health Care Plan for Non-bargaining Employees. . . .  Such coverages will be provided to you subject to and in accordance with all of the terms of such plans that are in effect from time to time after the Retirement Date. However, any supplemental contributions that you otherwise would be required to make towards the cost of your coverage under the Retiree Health Care Plan pursuant to the terms of the cost-sharing matrix applicable to early retirees, shall be waived. You will be responsible for any basic contributions.

50.   After his retirement, Roche was a participant in and received company-provided subsidies toward the cost of retiree health care benefits under the GPU Plans.

51.   After the merger of the GPU Plans into the FE Welfare Plan and/or the FE Health Care Plan, Roche was a participant in and received company-provided subsidies toward the cost of retiree health care benefits under the FE Health Care Plan.

**The Discontinuation of Certain Retiree Health Plan Subsidies**

13

52.   On or around March 2011, FE announced that its payment of monthly subsidies toward the cost of health care benefits for most retirees of the various FE companies would continue under the FE Health Care Plan until December 31, 2014. Effective January 1, 2015 and thereafter, participants would still be able to obtain retiree health care benefits under the FE Health Care Plan, but FE would no longer provide them with subsidies toward the cost of their retiree health care benefits.

53.   Former employees of GPU and its subsidiaries were among the FE retirees who received notice in or around March 2011 that their receipt of subsidies from FE toward the cost of their health care benefits would cease on December 31, 2014.

54.   On or about July 11, 2014, FE again notified most FE retirees and their surviving spouses that, effective January 1, 2015, FE would implement changes to their retiree health care benefits, including the discontinuation of subsidies toward the cost of health care benefits after December 31, 2014.

55.   FE further notified retirees that effective January 1, 2015 and thereafter, they would still be able to obtain retiree health care benefits under the FE Health Care Plan, but FE would not provide a subsidy toward the payment of the retiree health care benefits. A copy of this letter was sent to Graham and

14

Roche.

56.   Among the people who received the July 11, 2014 letter from FE notifying them that FE would discontinue providing them with subsidies toward the cost of health care benefits as of December 31, 2014, were other individuals who were employed or retired from GPU or its subsidiaries at the time of the Merger, but who had previously worked for JCP&L.

57.   On or about August 25, 2014, Graham wrote to FE's Human Resources department regarding the December 31, 2014 discontinuance of his receipt from FE of subsidies toward the cost of his retiree health care benefits.

58.   On or about August 25, 2014, Roche also wrote to FE's Human Resources Department regarding the December 31, 2014 discontinuance of his receipt from FE of subsidies toward the cost of his retiree health care benefits.

59.   On or about September 25, 2014, FE's Human Resources department responded to Graham and Roche, explaining that FE's decision to discontinue its payment of subsidies to retirees toward the cost of their health care benefits was originally communicated as early as 2009, as well as in subsequent materials, such as letters and annual open enrollment materials.

60.   In its September 25, 2014 Letter, FE's Human Resources department further noted that FE has consistently communicated its right to change coverage

or funding in almost all of its communications to plan participants, and pointed to specific language in the applicable summary plan description.  The FE's Human Resources department also informed Graham and Roche of their administrative claim and appeal rights.

61.     On or about December 31, 2014, FE discontinued providing subsidies toward the cost of retiree health care benefits to former GPU employees who participated in the FE Health Care Plan, including those like Graham and Roche who were employed by or retired from GPU or a GPU subsidiary at the time of the Merger, but who had at some previous time been employed by JCP&L.

62.     FE elected to not terminate company subsidies toward the cost of retiree health care benefits for some JCP&L current employees and retirees at the time of the Merger.

63.     Neither Graham nor Roche submitted an appeal to the FE Health Care Plan regarding the discontinuance of their receipt from FE of subsidies toward the cost of their retiree health benefits under the FE Health Care Plan.

**Graham's and Roche's Petition at the BPU**

64.     On or about August 7, 2017, Graham and Roche submitted a petition to the BPU, captioned Request for Investigation Into Compliance With the Board

16

Order In Docket No. EM00110870 by FirstEnergy Corp. and Jersey Central Power & Light, Docket No. EO17080870 (the "Petition" and generally, the "BPU Proceedings").

65.   In the Petition, Graham and Roche allege that all former JCP&L employees who were employees of the GPU system at the time of the Merger are entitled to receive the same benefits as employees of JCP&L.

66.   Graham and Roche allege in the Petition that they are GPU System retirees with 23 and 27 years of service, respectively, who were employed by JCP&L during a portion of their GPU careers.

67.   Graham and Roche assert in the Petition that prior to the Merger, employees who were transferred between GPU companies retained their compensation and benefit plans post-transfer. Graham and Roche also allege that non-bargaining unit employees of a GPU subsidiary were considered by GPU management to be "GPU System Employees," rather than employees of the specific subsidiary for which they worked, with respect to compensation and benefit plans. Graham and Roche contend that as "GPU System Employees" they, and similarly situated employees, are protected as the group of "GPU employees" identified in Paragraph 29 of the Stipulation.

68.   Graham and Roche allege in the Petition that, in January 2015, FE

improperly terminated subsidies for healthcare costs of some non-bargaining unit retirees of JCP&L and of nearly all non-bargaining unit retirees of the affiliated former GPU companies, including Graham and Roche and numerous similarly situated retirees.

69.     Graham and Roche contend in the Petition that FE inconsistently, arbitrarily and capriciously terminated subsidies for healthcare costs to them and other retirees and, in doing so, FE and JCP&L ignored the clear language of the Stipulation and BPU Merger Order, including the language in Paragraph 26 of the Stipulation.

70.     Graham and Roche allege in the Petition that FE may not terminate payments for healthcare costs for them and others similarly situated, as the retirement benefits are explicitly protected from reduction or termination by the conditions of the BPU Merger Order, including the healthcare benefit payments to former JCP&L employees who were transferred to another GPU subsidiary prior to the Merger, to which they claim they are entitled pursuant to Paragraph 26 of the Stipulation.

71.     The Petition requests that the BPU issue an order: (i) for the BPU staff to investigate FE's and JCP&L's alleged violation of the BPU Merger Order, and (ii) directing FE to comply with the BPU Merger Order, specifically with

respect to FE's alleged retiree health benefits obligations to former JCP&L employees.

72.   On the same date they filed this action, Plaintiffs answered the Petition, expressly asserting that BPU lacks jurisdiction to consider the ERISA issues that must necessarily be decided as part of the question raised under the Petition, and reserving the right to seek relief from this Court to prohibit BPU's adjudication of the Petition.

## CLAIM FOR RELIEF

**(Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.)**

73.   Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as if fully set forth herein.

74.   There is a substantial and continuing controversy between Plaintiffs and Defendants concerning Plaintiffs' discontinuation of subsidies toward the cost of health care benefits under the FE Health Care Plan.

75.   Defendants Graham and Roche have contended that Plaintiffs violated their obligations under the BPU Merger Order by discontinuing subsidies toward the cost of health care benefits under the FE Health Care Plan.

76.   Graham's and Roche's claims regarding Plaintiffs' compliance with the BPU Merger Order relate to Plaintiffs' rights and obligations with respect to an employee welfare benefits plan and necessarily require a determination of

19

rights created by ERISA and rights created by employee welfare benefit plans subject to ERISA.

77.   Paragraph 26 of the BPU Merger Order commands that JCP&L "shall honor" JCP&L pre-merger agreements that apply to current and former JCP&L employees.

78.   At the time of the merger between FE and GPU, the employee welfare benefits plans of which Graham and Roche were participants expressly reserved to GPU, the right to modify or terminate benefits.

79.   Accordingly, Plaintiffs retained the right to modify and terminate the employee welfare benefits plans previously sponsored by GPU.

80.   Paragraph 29 of the BPU Merger Order only creates obligations with respect to pension benefits.

81.   Accordingly, Paragraph 29 creates no obligations with respect to at the FE Welfare Plan and FE Health Care Plan, and the GPU Plans that were merged into the FE Welfare Plan and FE Health Care Plan, which are employee welfare benefit plans.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order:

(a)   Restraining and enjoining Defendants from continuing the BPU Proceedings;

20

(b)     Declaring that Paragraphs 26 of the BPU Merger Order did not modify, alter, or terminate Plaintiffs' rights with respect to the GPU Plans, so as to eliminate the ability of the plan's sponsor to terminate or amend benefits payable by the Plans.

(c)     Declaring that Paragraph 29 of the BPU Merger Order creates no obligations on the part of Plaintiffs with respect to the GPU Plans, FE Welfare Plan, or FE Health Care Plan, which are employee welfare benefits plans within the meaning of ERISA.

(d)     Declaring that no benefits or rights to benefits under the GPU Plans vested as a result of the BPU Merger Order.

(e)     Declaring that Plaintiffs lawfully and validly terminated the company-provided subsidies toward the cost of health care benefits to Roche and Graham under the FE Welfare Plan and FE Health Care Plan; and

(f)     Awarding Plaintiffs' attorneys' fees, costs of suit; and

(g)     Granting such other and further relief as this court deems just and proper.

Dated:   August 28, 2017        **GENOVA BURNS LLC**
         Newark, New Jersey     494 Broad Street
                                Newark, New Jersey 07102
                                (973) 533-0777

                                By:   *s/ Angelo J. Genova*
                                      ANGELO J. GENOVA
                                      LAWRENCE BLUESTONE
                                      DAVID A. TANGO

                                *Attorneys for Plaintiffs, FirstEnergy Service
                                Company, FirstEnergy Corp., and Jersey
                                Central Power & Light Company*

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to L. Civ. R. 11.2, the undersigned counsel for Plaintiffs hereby certifies that, other than the BPU Petition captioned <u>Request for Investigation Into Compliance With the Board Order In Docket No. EM00110870 by FirstEnergy Corp. and Jersey Central Power & Light</u>, Docket No. EO17080870, this matter in controversy is not the subject of any action pending in any court, or of any pending arbitration or administrative proceeding.

**GENOVA BURNS LLC**
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777
*Attorneys for Plaintiffs, FirstEnergy Corp. and Jersey Central Power & Light Company*

By:   *s/ Angelo J. Genova*
        Angelo J. Genova, Esq.

Dated:        August 28, 2017
                Newark, New Jersey

1593 /094 /14096923 v8

23